UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CARMON ZAUNBRECHER, ET AL.

CIVIL ACTION

V.

NO. 3:13-cv-00511-JWD-SCR

SHERIFF JEFFREY F. WILEY, ET AL.

## RULING AND ORDER

This matter comes before the Court on two Rule 12(b)(6) motions (R.Docs. 80 and 107) filed by Defendant Ascension Parish. After the parish filed the first motion, the Plaintiffs Carmon Zaunbrecher, Rachel Zaubrecher and Trevor Zaunbrecher, individually and on behalf of their deceased father, Jamie Zaunbrecher (collectively "Plaintiffs,") filed Plaintiffs' Fifth Amended and Supplemental Complaint (R.Doc. 97). Defendant Ascension Parish then filed the second Rule 12(b)(6) Motion (R.Doc. 107), and, " in an abundance of caution, the Parish adopt[ed] and incorporate[d] all law and argument as asserted in its original Rule 12(b)(6) Motion to Dismiss [Doc. 80]." Plaintiffs then filed an opposition to the second motion to dismiss. (R.Doc. 111). No reply has been filed. Oral argument is not necessary.

Considering the law and facts pled, Defendants' motions are denied.

**I. Rule 12(b)(6) Standard**

In *Thompson v. City of Waco, Texas,* 764 F.3d 500 (5th Cir.2014), the Fifth Circuit recently summarized the Rule 12(b)(6) standard as thus:

> We accept all well-pleaded facts as true and view all facts in the light most favorable to the plaintiff. We need not, however, accept the plaintiff's legal conclusions as true. To survive dismissal, a plaintiff must plead enough facts to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

1

*4 *Id.* at 502–503 (internal citations and quotations omitted). The court's duty is "to determine whether the plaintiff stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Id.* at 503.

## II. Discussion

### A. Section 1983 Liability

"It is … settled, after *Monell v. Department of Social Services*, [436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978)], that cities, counties, and other local government entities … are suable as persons under certain circumstances." 1 Sheldon H. Nahmod, Civil Rights & Civil Liberties Litigation: The Law of Section 1983 § 1:16 (Sept. 2014). With respect to holding a municipality liable under section 1983, the Fifth Circuit has explained:

> Under the decisions of the Supreme Court and this court, municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom. [*Monell v. Dep't. of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978)] and later decisions reject municipal liability predicated on *respondeat superior*, because the text of section 1983 will not bear such a reading. Consequently, the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability. The three attribution principles identified here—a policymaker, an official policy and the "moving force" of the policy—are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself.

*Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citations omitted). *See also Valle v. City of Houston*, 613 F.3d 536, 541-542 (5th Cir. 2010) (To establish municipal liability under § 1983, a plaintiff must show the deprivation of a federally protected right caused by action taken 'pursuant to an official municipal policy.' … A plaintiff must identify: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or

2

constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom.") (citations omitted).

Plaintiffs have satisfied the policymaker requirement. The Fifth Circuit has explained: "Actual or constructive knowledge of [a] custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority." *Piotrowski*, 237 F.3d at 579 (quoting *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (en banc)). Further, "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. (citation omitted). Whether an official possesses final policymaking authority for purposes of municipal liability is a question of state and local law." *Valle*, 613 F.3d at 542.

Here, the Plaintiffs have alleged in their original Complaint that, "upon information and belief therein [sic], [SHERIFF] WILEY has created a policy or custom under which unconstitutional practices occur and/or he has actual and/or constructive knowledge of the policy and custom of his deputies and persons within his control to disregard inmates constitutional rights…" (R.Doc. 1, ¶ 17). Plaintiffs reiterated all allegations set forth in their Original Complaint in their Fifth Amended and Supplemental Complaint. (R.Doc. 97, ¶ III). While somewhat barebones, this allegation is sufficient to satisfy this prong of the municipal liability analysis.[1]

Second, Plaintiffs have sufficiently alleged an official policy. The Fifth Circuit has explained a "policy may … be evidenced by custom, that is":

> (2) .... a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy."

---

[1] Whether Plaintiffs will ultimately be able to prove at trial that Sheriff Wiley has the "final policymaking authority" over the prison policies need not be addressed at this time.

*Piotrowski*, 237 F.3d at 579 (quoting *Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir. 1984) (en banc)).[2]

Plaintiffs allege a number of policies of Ascension Parish. Specifically, Plaintiffs allege that

> the ASCENSION PARISH POLICY did not require communication of their employees regarding inmate conditions, did not require their medical staff to review inmates' files prior to determining a course of medical treatment, did not require prompt response to the emergency medical needs of inmates, did not provide for a physician to oversee the activities of the nursing staff, did not provide for qualified medical personnel to diagnose the medical needs of the inmates, did not provide nurses with access to vital medical records of inmates, allowed untrained medical personnel to make determinations regarding the nature and severity of medical complaints of inmates and the treatment and required thereto and other written policies that lead to the deliberate indifference in providing medical care to inmates at Ascension Parish jail, including ZAUNBRECHER.

(R.Doc. 97, ¶ 13).

The Court is aware that "[i]solated violations are not the persistent, often repeated, constant violations, that constitute custom and policy as required for municipal section 1983 liability" and that "[a] customary municipal policy cannot ordinarily be inferred from single constitutional violations." *Piotrowski*, 237 F.3d at 581 (citations omitted). But whether Plaintiffs

---

[2] As the Supreme Court explained in *Monell*,

> [A]lthough the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels. As Mr. Justice Harlan, writing for the Court, said in *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 167–168, 90 S.Ct. 1598, 1613, 26 L.Ed.2d 142 (1970): "Congress included customs and usages [in § 1983] because of the persistent and widespread discriminatory practices of state officials . . . . Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law."

436 U.S. at 690-691.

will ultimately be able to prove that these violations existed is a question to be decided on the merits, not at the Rule 12(b)(6) stage. Here, this element is satisfied.

Finally, concerning the last prong, in addition to "causation" ("moving force"), the plaintiff must establish "culpability," or "deliberate indifference" to" federally protected rights." *Piotrowski*, 237 F.3d. at 580 (quoting *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998)). "Deliberate indifference of this sort is a stringent test" and requires more than a showing of "simple or even heightened negligence." *Id.* at 579 (citations omitted).

Here, Plaintiffs allege a violation of constitutional rights whose "moving force" was the policy or custom. Paragraphs 4-9 of the Fifth Amended and Supplemental Complaint detail the faulty actions of Nurse Shear. Paragraph 12 states that "SHEAR acted in accordance with the policy, custom and/or procedures and protocols promulgated, practiced and/or condoned by ASCENSION PARISH with regards to the medical treatment provided to inmates at the Ascension Parish Jail, including Zaunbrecher." As stated above, in paragraph 13, the Plaintiffs allege that the numerous written policies listed, and others, "lead to the deliberate indifference in providing medical care to inmates at Ascension Parish jail, including ZAUNBRECHER." Finally, in paragraph 14, Plaintiffs allege that the parish's "medical policy that applied to defendants, GAUDIN, RICHARD and SHEAR and that which was in effect at all times pertinent herein was so deficient that the policy itself is a repudiation of ZAUNBRECHER's constitutional rights and was the moving force of the constitutional violation." Taken together, these allegations appear to satisfy the final element for municipal liability under § 1983.[3]

---

[3] Again, whether Plaintiffs will ultimately succeed at trial in proving this "stringent test" need not be determined at this time.

In sum, given the standard for deciding a 12(b)(6) motion and the facts alleged by Plaintiffs, this court finds that Plaintiffs have successfully stated a claim upon which relief may be granted under § 1983 against Ascension Parish. Defendant's motion is accordingly denied with respect to this issue.

**B. State Law Claims**

Plaintiffs have adequately alleged a claim under state law against the parish. First, the Plaintiffs allege that the parish is vicariously liable for the acts of its employees, and, second, it alleges how the parish is liable for its own negligence.

Concerning vicarious liability, in Plaintiffs' original Complaint (Doc. 1), Plaintiffs merely alleged that Tommy Martinez, as Parish President, was vicariously liable for the actions of Nurse Michelle Gaudin, one of the deceased's medical providers. In Plaintiffs' Second Amended and Supplemental Complaint (Doc. 16), Plaintiffs substituted Ascension Parish instead of Martinez and sought recovery from it as the employer of Gaudin.

In Plaintiffs' Third Amended and Supplemental Complaint (R.Doc. 38), Plaintiffs sought to recover from Ascension Parish as the employer of Defendants Gaudin, Nurse Ty Gautreau, Nurse Robyn Richard, Lt. Troy Mayer, and an "unidentified ASCENSION PARISH MEDICAL TEAM COMPRISED OF UNIDENTIFIED NURSES AND PHYSICIAN ASSISTANT working at the ASCENSION PARISH JAIL." The third complaint also details how Gaudin, Gautreau, Richard, and Mayer were negligent in various ways to the deceased. (See R.Doc. 38, ¶¶ 33-35).

In the Fifth Amended and Supplemental Complaint, Plaintiffs re-assert all of the allegations of the prior complaints. (R.Doc. 97, ¶ III). Additionally, the fifth amended complaint names as a defendant:

> ASCENSION PARISH … individually and *as the employer of the defendants, GAUDIN, GAUTREAU, RICHARD* and unidentified ASCENSION PARISH

MEDICAL TEAM COMPRISED OF UNIDENTIFIED NURSES AND PHYSICIAN ASSISTANT working at the ASCENSION PARISH JAIL.

(emphasis added). Further, the fifth amended complaint, which added Nurse Rhonda Shear as a defendant in place of Ty Gautreau (R.Doc. 97, ¶ III, 1), contains detailed allegations of how Shear was negligent in her handling of Zaunbrecher's medical treatment. (See R.Doc. 97, ¶¶ III, 2-10). The complaint then states, "the defendant, ASCENSION PARISH, was the employer of SHEAR and is vicariously liable unto the plaintiffs for those acts committed by SHEAR." (R.Doc. 97, ¶ III, 11). Thus, the Fifth Amended and Supplemental Complaint alleges that the Parish was vicariously liable for the negligence of, at the very least, Michelle Gaudin, Robyn Richard, Ty Gautreau, Lt. Troy Mayer, and Rhonda Shear

Additionally, the Plaintiffs allege that the parish is liable for its own negligence. In paragraph 16 of the Fifth Amended and Supplemental Complaint, the Plaintiffs directly state how, "[i]n addition to … the acts of negligence, fault and lack of skill committed by their employees, defendants SHEAR, RICHARD and GAUDIN, ASCENSION PARISH" is liable to the plaintiffs "for its negligence", including:

- "Failure to properly supervise and/or train their employees;"
- "Failure to set forth proper policy, procedures and protocols to their employees so as to provide proper medical treatment of inmates at the Ascension Parish Jail, including Zaunbrecher;"
- "Promoting, creating, fostering, promulgating, condoning and/or allowing their employees to practice in a manner that violated the constitutional rights of inmates at Ascension Parish Jail, including Jamie Zaunbrecher;" and
- "Other acts of negligence which may be discovered during these proceedings."

Thus, because Plaintiffs have adequately alleged causes of action under § 1983 and Louisiana law against Ascension Parish, the parish's motions are denied.

**III. Conclusion**

Accordingly,

**IT IS ORDERED** that the Rule 12(b)(6) Motions to Dismiss on Behalf of Ascension Parish (R.Docs. 80 and 107) are **DENIED**.

Signed in Baton Rouge, Louisiana, on March 4, 2015.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**