# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

CARMON ZAUNBRECHER, ET AL.

                                      **CIVIL ACTION**

V.

                                      **NO. 13-CV-511-JWD-SCR**

SHERIFF JEFFREY F. WILEY, ET AL.

## RULING AND ORDER

        This matter comes before the Court on the Motion for Summary Judgment (R.Doc. 82) filed by defendants, Michelle Gaudin and Robyn Richard (collectively, the "Defendants"). The Defendants contend they are entitled to qualified immunity for their alleged conduct in the death of Ascension Parish Jail inmate Jamie Zaunbrecher on Sunday, February 24, 2013; that they were not deliberately indifferent to Zaunbrecher's medical needs; and that the Court should decline to exercise supplemental jurisdiction over the state law claims. The Plaintiffs Carmon Zaunbrecher, Rachel Zaunbrecher and Trevor Zaunbrecher, individually and on behalf of their deceased father, Jamie Zaunbrecher (collectively, the "Plaintiffs"), oppose the motion (R.Doc. 89). The Defendants filed a reply brief. (R.Doc. 92-2). No oral argument is necessary.

        Considering the law and facts in the record, the Defendants' motion is denied.

## I. Summary Judgment Standard

        "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts ... [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *See  Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 586–587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal citations omitted). The non-

mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by

only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994)

(citations and internal quotations omitted). "Where the record taken as a whole could not lead a

rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' "

*Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of
> the witnesses, weigh the evidence, or resolve factual disputes; so long as the
> evidence in the record is such that a reasonable jury drawing all inferences in
> favor of the nonmoving party could arrive at a verdict in that party's favor, the
> court must deny the motion.

 *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir.1991).

## II.  Qualified Immunity Standard

The Fifth Circuit has explained:

> A qualified immunity defense "serves to shield a government official from civil
> liability for damages based upon the performance of discretionary functions if the
> official's acts were objectively reasonable in light of then clearly established law."
> *Thompson v. Upshur County*, 245 F.3d 447, 456 (5th Cir.2001); *see also  Kinney
> v. Weaver*, 367 F.3d 337, 349 (5th Cir.2004) (en banc) (discussing the important
> goals served by the qualified immunity doctrine). "When a defendant invokes
> qualified immunity, the burden is on the plaintiff to demonstrate the
> inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314,
> 323 (5th Cir.2002) (en banc) (per curiam).

> To discharge this burden, a plaintiff must satisfy a two-prong test. First, he must
> claim that the defendants committed a constitutional violation under current law.
> *See, e.g.,  Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818
> (1999); *Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir.1999). Second, he must
> claim that the defendants' actions were objectively unreasonable in light of the
> law that was clearly established at the time of the actions complained of.  *See id.*

*Atteberry v. Nocona General Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005).

As to the first prong, the Defendants allegedly violated the Eighth Amendment by being deliberately indifferent in providing Jamie Zaunbrecher medical care. To prove deliberate indifference, the Plaintiffs must prove:

> the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970 (1994). Phrased another way, the Supreme Court has stated:

> a[n] … official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.

*Id.* at 847. "Deliberate indifference in this context 'describes a state of mind more blameworthy than negligence. Rather, 'acting or failing to act with deliberate indifference to a substantial risk of harm … is the equivalent of recklessly disregarding that risk.'" *Atteberry*, 430 F.3d at 254 (quoting *Farmer*, 511 U.S. at 835, 836, 114 S.Ct. 1970). "The test for deliberate indifference is subjective, rather than objective, in nature because 'an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.'" *Id.* at 255 (quoting *Farmer*, 511 U.S. at 838, 114 S.Ct. 1970)

In *Gobert v. Caldwell*, 463 F.3d 339 (5th Cir. 2006), the Fifth Circuit explained:

> Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. "Furthermore, the decision whether to provide additional treatment 'is a classic example of a matter for medical judgment.'" A showing of deliberate indifference requires the prisoner to submit evidence that prison officials " 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.' " "Deliberate indifference 'is an extremely high standard to meet.' "

*Id.* at 346 (citations omitted).  The Fifth Circuit has described the deliberate indifference standard as requiring "egregious intentional conduct."  *Id.* at 351.

As to the second prong, qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986).

In resolving the issue of qualified immunity on summary judgment, the facts are accepted in a light most favorable to the nonmoving party.  *Rankin v. Klevenhagen*, 5 F.3d 103, 105 (5th Cir. 1993).

## III. Discussion

### A. Nurse Richard

The motion for summary judgment as to Nurse Richard is denied.  The record reflects that Zaunbrecher died on Sunday, February 24, 2013.  On Monday, February 18, 2013, Zaunbrecher submitted a Medical Request Form seeking emergency care.  Zaunbrecher wrote on the form that his Ibuprofen ran out on the preceding day.  Further, Zaunbrecher complained, "I started having a severe pain in my Rt side back.  I have asked repeatedly for my pain meds to no avail.  Please replenish asap.  I also want to find out the origin of my pain."  Richard did not examine Zaunbrecher on the February 18th because he was in court.

On Tuesday, February 19, 2013, Richard addressed the Medical Request Form by refilling Zaunbrecher's Ibuprofen.  On this day, Richard did not examine Zaunbrecher or question him about his condition.

On Wednesday, February 20, 2013, Zaunbrecher submitted another Medical Request Form seeking emergency treatment.  Here, Zaunbrecher complains, "Severe back pain/spasms –

Continuous for 4 days. No relief!"  The Plaintiffs complain that no one examined Zaunbrecher on this day, but Defendants reply that this is standard procedure.

On Thursday, February 21, 2013, Richard examined Zaunbrecher.  The "Nursing Evaluation/Action Taken" part of the Medical Request Form indicates that Zaunbrecher complained of back pain – "States feel like toxins".  Richard testified that Zaunbrecher would have to see Ty Gautreau, the nurse practitioner, about his pain medication and blood work.  She explained to Zaunbrecher about Gautreau's schedule (i.e., that Gautreau only comes in on Wednesdays).  Thus, Zaunbrecher would have to wait until the following week before being seen by the nurse practitioner.  Richard testified that she did not know whether she told Gautreau about the severe back pain, but that there was no way for her to request that Zaunbrecher see Gautreau sooner.  However, she stated that there was no record of a "yellow sheet' indicating that Richard requested that Zaunbrecher see Gautreau.  Additionally, Richard stated in her affidavit that, when Zaunbrecher requested an increase in his Ibuprofen, she said he would need to discuss the issue with Gautreau. Richard offered Zaunbrecher Tylenol.

Finally, Richard testified that, on February 21, Zaunbrecher must have complained about constipation during the meeting.  She said in her deposition that her usual practice was to assess bowel sounds with a stethoscope.  In the Medical Request Form (and according to her affidavit), she noted decreased bowel sounds, so she administered Bisacodyl, a stimulant laxative, for constipation.  Richard testified that constipation was a common problem among inmates.

Richard further testified that her standard practice was not to review first the "Nature of the Complaint" section of the Medical Request Form, which was filled out by the inmate, because often times the inmate forgets what he writes or complains of different problems than what is contained in the request.

The record reflects that, after February 21, 2013, Richard did not follow up with Zaunbrecher on February 22, 23, or 24, the day he died. Further, Richard testified that she made no request for the guards to monitor Zaunbrecher's condition.

The Plaintiff submitted the affidavit of Adrienne Barnhill, an expert in nursing. Barnhill opined that Richard was deliberately indifferent a number of ways, including but not limited to: (1) failing to respond to the February 18 request for help, (2) failing to assess and examine Zaunbrecher from his initial request for emergency care on February 18 until February 21, (3) failing to read and consider Zaunbrecher's complaints in his medical request forms, (4) failing to forward the noted symptoms of potential intestinal obstruction to a nurse practitioner or licensed physician on February 21, 2013; (5) failing to follow standards of nursing in providing care to Zaunbrecher; (6) performing the "prohibited actions of medical diagnosis and prescription"; and (7) providing a laxative to a patient "whose symptoms suggest a condition in which laxatives are contraindicated". Defendants respond that these opinions do not amount to acts of deliberate indifference.

Having considered the facts and the law, the Court must determine whether Richard knew "that [Zaunbrecher] face[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. The Court concludes that a reasonable juror could conclude that Richard was deliberately indifferent to Zaunbrecher's medical condition.

Here, Richard was aware of a serious medical need. The Fifth Circuit has defined a "serious medical need" as "one for which treatment has been recommended or *for which the need is so apparent that even layman would recognize that care is required*." *Gobert*, 463 F.3d at 345 n. 12 (italics added). Similarly, the Supreme Court recognized in *Farmer* that:

> Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and *a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious*.

511 U.S. at 842 (citations omitted) (italics added). Thus, "a trier of fact may infer knowledge from the obvious." *Id.* at 844.

Richard's awareness of Zaunbrecher's serious medical need is evidenced by Zaunbrecher's complaints of "a severe pain in [his right] side back" and of "Severe back pain/spasms – Continuous for 4 days. No relief!" Even assuming she did not read these comments initially,[1] a reasonable juror could conclude that Richard was aware of the severe risk of harm because Zaunbrecher told him that his back pain "feel[s] like toxins." This was an obvious danger, and a layman would recognize that care is required.

Thus, the key issue here is whether Richard was deliberately indifferent by "ignor[ing] [Zaunbrecher's] complaints." *See Gobert*, 463 F.3d at 346. The Court finds that a reasonable juror could conclude that Richard was deliberately indifferent by ignoring the serious risk of harm to Zaunbrecher in several ways, including: (1) by not consulting the "Nature of the Complaint" forms to gather more information after Zaunbrecher's complaint of "toxins"; (2) by not alerting the guards to monitor his condition, given the "toxins" comment; (3) by not alerting a doctor or nurse practitioner, given the "toxins" comment; and (4) by not following up with Zaunbrecher, first, after his complaints in the February 18, 2013, Medical Request Form, and, second, after the February 21, 2013, exam, prior to his death on February 24, 2013.

---

[1] Richard's claim not to have read the Medical Request Form, at least with respect to the February 18, 2013, one, which complained of "severe pain in my Rt side back," appears to be contradicted by the fact that Richard did not see Zaunbrecher yet still refilled his Ibuprofen. Thus, she had to have read the "Nature of the Complaint" section; otherwise, she could not have provided even the limited treatment she did.

The Defendants emphasize that Zaunbrecher did not disclose his history with respect to diverticulitis, diverticulosis, peritonitis, bowel obstructions and other related conditions. However, a reasonable juror could find that Richard ignored Zaunbrecher's complaints regardless of his failure to disclose these conditions.

The Defendants also note the numerous times in Zaunbrecher's medical history where he was provided with medical treatment for his diabetes. These instances are irrelevant, however, as to whether Richard was deliberately indifferent from Monday, February 18, 2013, until Zaunbrecher's death on Sunday, February 24, 2013.

The Defendants contend that *Gobert* is nearly indistinguishable. However, in finding no deliberate indifference, the *Gobert* court agreed with the Defendant's exculpatory assessment that there were "multiple examinations[2] and administered medications, lack of complaint, and failure to follow orders." 463 F.3d at 346. Here, with Nurse Richard, there was only one examination, only one medication administered, several complaints by the Plaintiff, and no refusal to follow orders by Zaunbrecher. The Fifth Circuit also cited the Defendant's version of the medical history, which notes several follow up visits. *Gobert*, 463 F.3d at 347 n. 24. Here, Richard provided no follow up after her sole instance of examination and made no further inquiries into his condition. Accordingly, *Gobert* is distinguishable.[3]

---

[2] The *Gobert* court noted that the defendant doctor "personally examined [the plaintiff] on three occasions during the span of two and one half months, and apparently issued orders on nine occasions." *Gobert*, 463 F.3d at 344.

[3] The Court further notes the following relevant passage from *Gobert*:

> The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a *sufficiently substantial risk of serious damage to his future health*, and it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843, 114 S.Ct. 1970 (internal quotation omitted and emphasis added). Thus, the risk must be cognizable, but the consequences of that risk need not yet have materialized, in order to define the time to begin to determine whether the defendant disregarded the risk. *See Gates v. Cook*, 376 F.3d 323, 341 (5th Cir.2004) (holding that an Eighth Amendment plaintiff did not have to prove that he was actually

In sum, the issue of deliberate indifference should be left to the jury. A reasonable juror could infer deliberate indifference from the obvious danger presented here.

Further, the Court concludes that Richard is not entitled to qualified immunity. Richard's actions were "objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Atteberry*, 430 F.3d at 253. Accordingly, summary judgment as to Nurse Richard is denied.

## B. Nurse Gaudin

Summary Judgment as to Michelle Gaudin is denied. The record reflects that, on Friday, February 22, 2013, Zaunbrecher submitted a Medical Request Form requesting emergency treatment. In the Nature of Complaint section, Zaunbrecher complains, "Stool softener not working, belly tight and tender[.] No bowel movements. I have started vomiting." Gaudin claimed that she usually does not look at what the inmate complains about in this section because inmates' stories change from when they write something to when they actually see her.

At approximately 1:27 p.m. on the same date, according to Gaudin's affidavit, Gaudin examined Zaunbrecher. Gaudin testified that Zaunbrecher complained of constipation. Her notes from the Medical Request Form indicate that Zaunbrecher said he had been constipated for three days and that his abdomen was hard and distended. According to her affidavit, she "performed a physical examination within the limits of the practice of nursing." Gaudin testified that she used her stethoscope and pressed on his abdomen, and he did not grimace at that time. Zaunbrecher had taken a laxative on two prior occasions (the night before and that

---

injured by exposure to raw sewage, only that such exposure posed a serious health risk). Rather, the defendant's action or inaction before the risk is realized remains relevant to the analysis of deliberate indifference. "A Remedy need not await a tragic event." *Helling v. McKinney*, 509 U.S. 25, 33, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993).

*Gobert*, 463 F.3d at 349 n. 30.

morning), so Gaudin wanted to provide something a little stronger. According to her affidavit, as a result of the complaints and symptoms, Gaudin called Ty Gautreau and asked if she could give Zaunbrecher magnesium citrate, a powerful laxative. Gautreau made the prescription. While waiting for the magnesium citrate, Zaunbrecher was returned to his cell.

At approximately 2:15 p.m., according to Gaudin's deposition, Zaunbrecher came back to Gaudin for the magnesium citrate. At this meeting, according to Gaudin, Zaunbrecher "indicated that, in the interim period, he had had a bowel movement, which led her to believe that the constipation was clearing." Nevertheless, Gaudin ordered that Zaunbrecher take one half of the magnesium citrate at that time. She told him she would give it to the officers to keep in the control room so if at any time during the weekend he needed the medicine, he could use it.

At approximately 2:30 p.m., Sgt. Kevin Wald brought Zaunbrecher back to Gaudin because Zaunbrecher had vomited when he got back to his jail. Gaudin attests that she attributed the vomiting as a reaction due to the taste of the magnesium citrate. She recommended that Zaunbrecher walk to get his bowels moving because inmates frequently have constipation because they "sit around and not do anything."

After being told that he vomited, she gave no further instructions to anyone at the jail regarding Zaunbrecher's care over the weekend. Further, she did not tell anybody to monitor his progress or to contact her if his condition worsened. Gaudin said that, when she last saw Zaunbrecher, his condition was not critical because he was walking, responsive to questions, and did not request to go to a hospital

Roy Gravette, the Plaintiff's expert in the field of corrections, provided an affidavit which contains certain facts from an interview with Raymond Gross. Gravette asserts:

> On or about February 22, 2013 Raymond Gross spoke with Nurse Michelle
> Gaudin and communicated to her that Jamie Zaunbrecher appeared to be in severe

pain and discomfort and she told me [sic] that he did not need medical attention and was looking for pain medication.[4]

Additionally, Gaudin testified that she would not have reviewed his medical chart when she prepared her February 22, 2013, nursing evaluation. Thus, she may not have seen the February 18 and 20, 2013, information provided by Richard, though she might have.

There is conflicting evidence about Gaudin's role in treating Zaunbrecher on Saturday, February 23, 2013. In her deposition, Gaudin stated that she recalls receiving a call on that day about Zaunbrecher. She missed the call and then returned it, though she did not recall which guard with whom she spoke. Gaudin testified that the guard said he had already spoken with Nurse Shear about Zaunbrecher and that they had taken care of the situation, so Gaudin and the guard went into a conversation about another inmate.

In his affidavit, Lt. Troy Mayers offers a different version of the events on Saturday, February 23, 2013. Mayers attests that, on that day, at approximately 10:45 a.m., he became aware of Zaunbrecher's medical issues when Mayers was informed that Zaunbrecher appeared to be sick and was vomiting. The jail staff checked his vital signs, and they appeared normal except for an elevated pulse rate. Mayers attests that he "spoke with jail nurse Rhonda Sheer *and* jail nurse supervisor Michelle Gaudin and Shear, who *both indicated* that Mr. Zaunbrecher did not require hospitalization." (emphasis added). *They* instructed Mayer to continue the current

---

[4] Fed.R.Evid. 703 provides:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

The court finds here that the probative value in helping evaluate the opinion substantially outweighs any prejudicial effect of the inmate's testimony. Further, the Court notes that the Defendants voiced no objection to these statements. Accordingly, the Court will consider them.

course of medication for Zaunbrecher's stomach complaint and to monitor him. "The *nurses* indicated" to Mayers that, if Zaunbrecher's condition appeared to worsen, additional measures may have to be taken." Thus, according to Mayers, Gaudin did provide medical advice concerning Zaunbrecher's condition on February 23, 2013, even though Gaudin did not see or examine him.

On February 24, 2013, Gaudin received a call in the afternoon, around the seventh inning of an LSU game. She suspected it was around 2:00 p.m. She spoke with Lt. Mayer. Gaudin said that Mayers told her what Zaunbrecher's blood pressure was, what his vital signs were, and that he complained about his back pain. According to Gaudin, "that's when I told him, 'Look, he needs to get to the hospital.'" She was sure Mayer also conveyed his pulse rate. Gaudin said that was all of their conversation at the time. Gaudin said she did not need any information other than his vital signs. She did not inquire about what other conditions he had, such as stomach pain. According to Mayers, Gaudin specifically said that an ambulance was not necessary.

Deputy Jon Small, who drove Zaunbrecher to the hospital, said that no emergency was noted to him. According to his deposition, he did not use his emergency flashers during the trip to the hospital because no one indicated to him it was an emergency.

According to the autopsy, Zaunbrecher's time of death was 2:46 pm. This means it took around forty-five minutes from the time Mayers called Gaudin to transfer Zaunbrecher from the Ascension Parish Jail to Prevost Hospital, which, according to GoogleMaps, was fifteen minutes away. According to the hospital records, Zaunbrecher was pulseless on arrival and was cover in feculent emesis in the backs seat of the vehicle. The emesis was in his nasal and oral pharynx.

Further, Gravette stated in his affidavit that

On February 24, 2013 Raymond Gross heard Lt. Mayer[s] advise Sgt. Wald that Zaunbrecher was faking and looking for narcotics and *that Nurse Gaudin told him that Zaunbrecher could wait for treatment until the next day.*

(emphasis added).

The call with Ty Gautreau on Friday, February 22, 2013, was the only time Gaudin spoke to Ty Gautreau about Zaunbrecher between Friday, February 22, 2013, and Sunday, February 24, 2013, the day of Zaunbrecher's death. Further, at no time during that period did Gaudin call the jail to check on Zaunbrecher, though she testified that she normally would not call to check on inmates.

Adrienne Barnhill, the Plaintiff's expert in nursing, identified a number of ways in which Gaudin was deliberately indifferent, including: (1) failing to perform standard assessments to help identify, manage, or rule out intestinal obstruction or peritonitis when faced with warning symptoms; (2) failing to assess the quality of Zaunbrecher's bowel sounds, to regularly monitor Zaunbrecher's bowel sounds every few hours for changes, to question Zaunbrecher about the characteristics of his vomit, to question Zaunbrecher about the characteristics of his bowel movements (such as size and inconsistency), to assess Zaunbrecher for pain, to measure Zaunbrecher's abdominal girth for subsequent comparison, to assess whether Zaunbrecher was passing flatus, and to assess Zaunbrecher's vital signs; (3) failing to review Zaunbrecher's medical charts; (4) failing to communicate the full range of symptoms to Ty Gautreau; (5) failing to abide by industry standard of practice in nursing in documentation; (6) providing a laxative to a patient "whose symptoms suggest a condition in which laxatives are contraindicated"; (7) failing to know the effects of medication proscribed; (8) making assumptions about the cause of Zaunbrecher's new symptom of vomiting and disregarding it; and (9)failing to alert prison

staff to Zaunbrecher's need for close observation. Defendants contend that these do not amount to acts of deliberate indifference.

While there appears to be many acts of negligence from the record, as with Nurse Richard, the key issue here is whether Gaudin knew that Zaunbrecher faced a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.

First, a reasonable juror could conclude that Gaudin knew Zaunbrecher faced a substantial risk of harm. Even assuming that Gaudin did not read Zaunbrecher's complaints on his Medical Request Form that the "stool softener not working, belly tight and tender … No bowel movements. I have started vomiting," Gaudin indicated in her own notes that he was constipated for three days, had a hard and distended abdomen, and that the laxative was not working. Further, construing the facts in a light most favorable to the Plaintiff, the inmate Raymond Gross told Gaudin that Zaunbrecher "appeared to be in severe pain and discomfort" on February 22, 2013. Even though Zaunbrecher allegedly told Gaudin that he had a bowel movement, he still vomited again after taking the medicine. Moreover, construing the facts most favorably to the Plaintiffs, Mayers communicated to Gaudin on Saturday, February 23, 2013, that Zaunbrecher appeared to be sick and was vomiting. Finally, she was again consulted of his condition on Sunday, February 24, 2013. Thus, a reasonable juror could conclude that Zaunbrecher faced a serious medical need for which the need was so apparent that even a laymen would recognize that care is required and that Gaudin knew of that condition.

With respect to the "failure to take reasonable steps" requirement, the key issue is whether Gaudin "ignored [Zaunbrecher's] complaints." While Gaudin obtained the prescription for the powerful laxative on Friday, Febuary 22, 2013, Gaudin gave no further instructions to

anyone at the jail regarding Zaunbrecher's care over the weekend on that day, and she did not tell anybody to monitor his progress or to contact her if his condition worsened.

There appears to be a factual dispute as to what Gaudin did on Saturday, February 23, 2013. She testified that she made no inquiries about Zaunbrecher on that day and that her conversation about Zaunbrecher was minimal. Mayers, on the other hand, indicated that he updated Gaudin on the fact that Zaunbrecher appeared to be sick and was vomiting, yet, without having an in-person assessment of Zaunbrecher, said to simply continue the course of medication and to monitor him. Only if his condition appeared to worsen would additional measures be taken. This factual dispute weighs against the granting of summary judgment. And, construing the facts most favorably to the Plaintiffs, the Court finds that, either way, Gaudin ignored Zaunbrecher's deteriorating condition.

On Sunday, February 24, 2013, when Gaudin was apprised of Zaunbrecher's vital signs, she made no further inquiries into his condition before telling the guards that Zaunbrecher did not need an ambulance to go to the hospital. Again, construing the facts in a light most favorable to the Plaintiff, two days earlier, Gaudin told the inmate Raymond Gross that Zaunbrecher "did not need medical attention and was looking for pain medication." And Gross also heard Mayers say on February 24, 2013, that "Nurse Gaudin told [Mayers] that Zaunbrecher could wait for treatment until the next day." Considering all these facts, the Court concludes that a reasonable juror could conclude that Gaudin recklessly disregarded Zaunbrecher's serious medical need by ignoring it.

A reasonable juror could find that Gaudin ignored Zaunbrecher's complaints regardless of his failure to fully disclose his full medical history. Moreover, the many times in Zaunbrecher's medical history where he was provided with medical treatment for his diabetes is

ultimately irrelevant as to whether Gaudin was deliberately indifferent on the dates in question. Additionally, for the same reasons outlined above, the Court finds *Gobert* distinguishable.

Finally, the Court concludes that Gaudin is not entitled to qualified immunity. Construing the facts in the light most favorable to the Plaintiffs, Gaudin's conduct was "objectively unreasonable." *Atteberry*, 430 F.3d at 253. Accordingly, summary judgment as to Nurse Gaudin is denied.

**IV. <u>Conclusion</u>**

Accordingly,

**IT IS ORDERED** that the Motion for Summary Judgment (R.Doc. 82) filed by defendants Michelle Gaudin and Robyn Richard is **DENIED**.

Signed in Baton Rouge, Louisiana, on <u>March 18, 2015</u>.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**