# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**CARMON ZAUNBRECHER, ET AL.**

**V.**

**SHERIFF JEFFREY F. WILEY, ET AL.**

**CIVIL ACTION**

**NO. 13-CV-511-JWD-SCR**

## RULING AND ORDER

This matter comes before the Court on the Motion for Summary Judgment (R.Doc. 103) filed by Defendant Rhonda Shear. The Defendant contends she is entitled to qualified immunity for her alleged conduct in the death of Ascension Parish Jail inmate Jamie Zaunbrecher on Sunday, February 24, 2013; that she was not deliberately indifferent to Zaunbrecher's medical needs; and that the Court should decline to exercise supplemental jurisdiction over the state law claims. The Plaintiffs Carmon Zaunbrecher, Rachel Zaunbrecher and Trevor Zaunbrecher, individually and on behalf of their deceased father, Jamie Zaunbrecher (collectively, the "Plaintiffs"), oppose the motion (R.Doc. 110). The Defendant filed a reply brief. (R.Doc. 112-1). No oral argument is necessary.

Considering the law and facts in the record, the Defendant's motion is granted in part and denied in part. The Court dismisses with prejudice the claim Plaintiffs made against Shear under 42 U.S.C. § 1983. However, the Court will retain jurisdiction over Plaintiffs' state law claims.

## I. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to

the material facts ... [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (citations and internal quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir.1991).

## II. <u>Qualified Immunity Standard</u>

The Fifth Circuit has explained:

> A qualified immunity defense "serves to shield a government official from civil liability for damages based upon the performance of discretionary functions if the official's acts were objectively reasonable in light of then clearly established law." *Thompson v. Upshur County*, 245 F.3d 447, 456 (5th Cir.2001); *see also Kinney v. Weaver*, 367 F.3d 337, 349 (5th Cir.2004) (en banc) (discussing the important goals served by the qualified immunity doctrine). "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir.2002) (en banc) (per curiam).
>
> To discharge this burden, a plaintiff must satisfy a two-prong test. First, he must claim that the defendants committed a constitutional violation under current law. *See, e.g., Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); *Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir.1999). Second, he must claim that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of. *See id.*

*Atteberry v. Nocona General Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005).

As to the first prong, the Defendant Rhonda Shear allegedly violated the Eighth Amendment by being deliberately indifferent in providing Jamie Zaunbrecher medical care. To prove deliberate indifference, the Plaintiffs must prove:

> the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970 (1994). Phrased another way, the Supreme Court has stated:

> a[n] … official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.

*Id.* at 847. Concerning a "substantial risk of serious harm," the Fifth Circuit has defined a "serious medical need" as "one for which treatment has been recommended or for which the need is so apparent that even layman would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n. 12 (5th Cir. 2006).

"Deliberate indifference in this context 'describes a state of mind more blameworthy than negligence. Rather, 'acting or failing to act with deliberate indifference to a substantial risk of harm … is the equivalent of recklessly disregarding that risk.'" *Atteberry*, 430 F.3d at 254 (quoting *Farmer*, 511 U.S. at 835, 836, 114 S.Ct. 1970). "The test for deliberate indifference is subjective, rather than objective, in nature because 'an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.'" *Id.* at 255 (quoting *Farmer*, 511 U.S. at 838, 114 S.Ct. 1970)

In *Gobert v. Caldwell*, the Fifth Circuit explained:

> Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. "Furthermore, the decision whether to provide additional treatment 'is a classic example of a matter for medical judgment.'" A showing of deliberate indifference requires the prisoner to submit evidence that prison officials "'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" "Deliberate indifference 'is an extremely high standard to meet.'"

463 F.3d at 346 (citations omitted). The Fifth Circuit has described the deliberate indifference standard as requiring "egregious intentional conduct." *Id.* at 351.

As to the second prong, qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986).

In resolving the issue of qualified immunity on summary judgment, the facts are accepted in a light most favorable to the nonmoving party. *Rankin v. Klevenhagen*, 5 F.3d 103, 105 (5th Cir. 1993).

## III. Discussion

### A. § 1983 Claim Against Nurse Shear

The Court finds that the Plaintiff has failed to raise an issue of material fact as to either prong of the qualified immunity analysis. Thus, as a matter of law, Shear is entitled to summary judgment.

A reasonable juror could not conclude that Shear violated Zaunbrecher's Eighth Amendment rights. First, Shear was not aware of a substantial risk of harm or a "serious medical need." According to Shear's deposition, she never saw Jamie Zaunbrecher. (R.Doc. 103-3, p.3.) Zaunbrecher died on Sunday, February 24, 2013, and, prior to Saturday, February 23, 2013, she

4

had no communications with any jail personnel concerning Zaunbrecher or his medical condition. (Id., p. 2-4.)

Shear said that, on Saturday, February 23, 2013, she received a call on her cell phone from Lieutenant Troy Mayers at the jail. (Id., p. 5.) Shear did not recall if Mayers identified Zaunbrecher, but she indicated that, even if Mayers had, it was fair to say that she had no experience or history with Zaunbrecher because he was not in her unit. (Id., p. 7.) Mayers said that Sergeant Wald observed Zaunbrecher "not feeling well." (Id., p. 6, 8.) Zaunbrecher "wasn't complaining. The officer just observed him not feeling well." (Id., p. 6; see also Id. at p. 8 ("the inmate didn't complain about not feeling well. The officer just noticed him not looking or feeling well.")) Shear was not told that he was experiencing pain in any particular location or that he was complaining of constipation. (Id., p. 8.) Shear told Mayers "that [she] didn't know anything about [Zaunbrecher] because [she] didn't know who he was," had "never seen him before," and "[d]idn't know anything about his history or anything." (Id., p. 6.)

Shear had no other communications with Lieutenant Mayers on that phone call. (Id., p. 11.) She recalled that the call was "pretty short." (Id.) Shear received no other calls on Saturday, February 23, 2013, or Sunday, February 24, 2013.

Based on this evidence, a reasonable juror could not conclude that Shear was aware of a substantial risk of harm or serious medical need faced by Zaunbrecher. The record is clear that the information available to Shear did not indicate that treatment had been recommended, and the need for treatment was not so apparent that even layman would recognize that care was required. On this ground alone, summary judgment should be granted.

Second, even if Shear was aware of a substantial risk of harm faced by Zaunbrecher, no reasonable juror could conclude that Shear was deliberately indifferent. Shear said to "keep an

5

eye on [Zaunbrecher] and if they [(i.e., the guards)] thought he needed to go to the hospital, to take him to the hospital." (Id., p. 7, 9.) Shear left it to the discretion of the officer to dictate whether or not Zaunbrecher needed further treatment. (R.Doc. 110-4, p. 12.)

Shear testified that she was assigned to Unit 1. (R.Doc. 103-3, p. 3.) Around the time of Zaunbrecher's illness and death, she did not know the sick call routine for Unit 3, Zaunbrecher's unit. (Id.) Further, the file for an inmate in Unit 3 would not be kept in Unit 1, and that file would not be available for Shear to review at the time of her phone call. (R.Doc. 110-4, p. 6). Nor was she able to access the file digitally. (Id.) Regardless of whether she knew Zaunbrecher's name, Shear was not at the prison and so could not look up an inmate's file. (Id., p. 7.). The door was locked to the file room, and the guards cannot access the inmate files. (Id.)

Considering this evidence, no reasonable juror could conclude that Shear was deliberately indifferent to Zaunbrecher's medical needs. As stated above, "[a] showing of deliberate indifference requires the prisoner to submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Gobert,* 463 F.3d at 346. There is no evidence of any of type of such conduct. In short, the Plaintiffs have failed to meet the high burden required by the deliberate indifference standard.

Plaintiffs attempt to create an issue of fact by pointing vaguely to the evidence submitted in opposition to the other motions for summary judgment filed in this case. See R.Doc. 89. However, Plaintiffs fail to state how these documents create an issue of fact.

Further, the affidavit of Lt. Mayers and Sgt. Kevin Wald, submitted in support of the Sheriff Defendants'[1] Motion for Summary Judgment (R.Doc. 83), appears to support Shear's account. Mayers attested:

> Affiant became aware of Mr. Zaunbrecher's medical issues on Saturday, February 23, 2013, at approximately 10:45 a.m., when Affiant was informed that Zaunbrecher appeared to be sick and was vomiting. Jail staff checked his vital signs and they appeared normal except for an elevated pulse rate. Affiant spoke with jail nurse Rhonda Sheer [sic] and jail nurse supervisor Michelle Gaudin, who both indicated that Mr. Zaunbrecher did not require hospitalization. The nurses instructed Affiant to continue the course of medication for Mr. Zaunbrecher's stomach complaints and to monitor him. The nurses indicated to him that if Mr. Zaunbrecher's condition appeared to worsen, additional measures may have to be taken.

(R.Doc. 83-7, p. 1-2). Notably, this paragraph does not fully account for the conversation between Shear and Mayers. According to Wald's affidavit, Mayers told Wald that the "jail nurse," who is unidentified, stated that, while there was no need to transport Zaunbrecher to the hospital at that time, Zaunbrecher should be monitored, and, if his conditioned worsened, he should be transported to the hospital. (R.Doc. 83-9, p. 1-2).

The Court finds that the minor variations between Shear's deposition and Mayer and Wald's affidavits – namely, "not looking or feeling well" and no complaints by Zaunbrecher according to Shear's deposition versus "stomach complaints" and "appeared to be sick and was vomiting" in Mayers' affidavit – do not amount to a genuine issue of *material* fact.

Further, even construing the facts most favorably to the Plaintiffs and assuming that Shear was aware of the additional fact of vomiting and stomach complaints, the Court finds that this is not enough to warrant a finding that Shear was aware of a substantial risk of serious harm. Again, even giving the Plaintiffs a favorable construction of the facts, the need for treatment was not so apparent that even layman would recognize that care was required.

---

[1] The term "Sheriff Defendants" is defined in R.Doc. 118.

Although the Court denied summary judgment as to the § 1983 claim against Nurse Gaudin (See R.Doc. 119), that ruling is distinguishable from the present one. Gaudin, in addition to being told that Zaunbrecher "appeared to be sick and was vomiting" on February 23, 2013, performed an in-person evaluation of Zaunbrecher on February 22, 2013 and was told by Raymond Gross that Zaunbrecher "appeared to be in severe pain and discomfort." (See R.Doc. 119, p. 14.) Thus, Gaudin had the requisite knowledge that Nurse Shear lacked.

Plaintiffs also attempt to prevent summary judgment through the affidavit of Adrienne Barnhill, their expert in the field of medical-surgical nursing. Barnhill claims that Shear was deliberately indifferent in several ways, including (1) failing to inquire from the Sheriff's staff about specific information in order to make an accurate assessment of Zaunbrecher's medical condition; (2) failing to make any effort to obtain the patient's history and/or medical condition and/or treatment history prior to issuing a treatment directive; and (3) delegating the medical decision making to Sheriff's officers with no medical training.

Even accepting these facts as true, the Court finds that Nurse Shear is still entitled to summary judgment. At most, the Barnhill Affidavit demonstrates acts of negligence, not acts of deliberate indifference required for a constitutional violation.

Finally, the Court finds that, even if the Plaintiffs had shown a violation of Zaunbrecher's Eighth Amendment rights, Nurse Shear would be entitled to qualified immunity. No reasonable juror could conclude that her actions were objectively unreasonable or "plainly incompetent."

Accordingly, the Court grants the Defendant Rhonda Shear's motion for summary judgment as to the Plaintiffs' § 1983 claim. This claim is hereby dismissed.

## B. Supplemental Jurisdiction Over State-Law Claims

Having dismissed the § 1983 claim against Rhonda Shear, the Court must determine whether to exercise supplemental jurisdiction over the Plaintiffs' state law claims against her. The Court will exercise such jurisdiction.

28 U.S.C. § 1367 provides in part:

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

Here, this Court has original jurisdiction over the 42 U.S.C. § 1983 claims filed against the Sheriff Defendants, Nurse Michelle Gaudin, and Nurse Robyn Richard. *See Williams v. Ragnone*, 147 F.3d 700, 702 (8th Cir. 1998). The state law claims against Nurse Shear are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." All of the claims asserted in this case, state and federal, surround the treatment and care of Zaunbrecher prior to his death. Further, as § 1367 makes clear, "supplemental jurisdiction shall include claims that involve the joinder … of additional parties," like the Defendants here.

Section 1367 further provides that:

> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
>
>> (1) the claim raises a novel or complex issue of State law,
>>
>> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>>
>> (3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Here, the claims against Shear do not raise a novel or complex issue of State law, do not substantially predominate over the claims against the Sheriff Defendants (and in fact are integrally related), and there are no exceptional or compelling reasons for declining jurisdiction. Further, as stated above, this Court has not dismissed all claims over which it has original jurisdiction.

Moreover, as our Brother in the Eastern District of Louisiana explained:

In the event that all federal claims are dismissed or eliminated from the action, the general rule is for U.S. District Courts to decline to exercise jurisdiction over the remaining supplemental state law claims. However, "this rule is neither mandatory nor absolute." *Baptiste v. Island Records, Inc*., 179 F.3d 217, 227 (5th Cir.1999). Instead, U.S. District Courts are directed to consider the interests of judicial economy, convenience, fairness, and comity. *Id*.; *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir.1996)(*citing Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988))("The Supreme Court has instructed that, when dealing with motions to remand pendent claims, courts should exercise their discretion in a way that best serves the principles of economy, convenience, fairness, and comity.") If a federal claim is " 'eliminated at an early stage of the litigation, the District Court ha[s] a powerful reason to choose not to continue to exercise jurisdiction.' " *Doddy*, 101 F.3d at 456 (quoting *Cohill*, 484 U.S. at 351.). "However, no single factor is dispositive." *Id*.

*Chauvin v. Radioshack Corp.*, No. 08-4255, 2009 WL 961247, at *2 (E.D.La. Apr. 08, 2009) (Africk, J.), *affirmed,* 332 Fed.Appx. 994, at *1 (5th Cir. 2009).

Thus, even if all federal claims were dismissed in this action (which they were not), the Court would still find it in the best interest of judicial economy, convenience, and fairness to exercise supplemental jurisdiction over the state-law claims against Rhonda Shear. This case has been pending for over one and a half years, and it appears from the record that considerable discovery has been conducted in this matter. This weighs heavily in favor of retaining jurisdiction to finish the action in this Court. Further, much of the evidence relevant to the

claims against the Sheriff Defendants, Michelle Gaudin, and Robyn Richard will also be relevant to the claims against Shear. It will be convenient to try as many of the Plaintiffs' claims in one action as possible, and it will not unduly prejudice or burden Shear or confuse the jury. Accordingly, the Court will retain supplemental jurisdiction over the Plaintiffs' state law claims against Defendant Rhonda Shear.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that the Defendant Rhonda Shear's Motion for Summary Judgment (Doc. 103) is **GRANTED IN PART** and **DENIED IN PART**;

**IT IS FURTHER ORDERED** that the Plaintiffs' claim under 42 U.S.C. § 1983 against the Defendant Rhonda Shear is **DISMISSED WITH PREJUDICE**; and

**IT IS FURTHER ORDERED** that the Court will retain jurisdiction over the Plaintiffs' state law claims against the Defendant Rhonda Shear.

Signed in Baton Rouge, Louisiana, on <u>April 17, 2015</u>.

_____
**JUDGE JOHN W. deGRAVELLES
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**